IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEONARD O. JOHNSON            *
          Plaintiff,
   v.                                    *   CIVIL ACTION NO. RDB-05-1026

CHARLES COUNTY DETENTION CENTER *
          Defendant.
                               ******

**MEMORANDUM OPINION**

I.    Procedural History

At all times mentioned in this 42 U.S.C. § 1983 civil rights complaint for damages, Leonard O. Johnson ("Plaintiff") was housed at the Charles County Detention Center in LaPlata, Maryland ("CCDC"). Plaintiff alleges that he was detained at CCDC from August 29, 2003, to May 4, 2004, and from October 22, 2004, to November 30, 2004. (Paper No. 1). Plaintiff is a diabetic. He claims that this condition was known by CCDC staff, but they nonetheless refused to provide him insulin, allowing his blood sugar level to reach four to five times the normal range. (*Id*. at Attachment). He further complains that the CCDC kitchen did not serve him "diabetic friendly meals," but rather provided him the same type of food as the rest of the CCDC prisoners. (*Id*.). At bottom, Plaintiff states that he was not provided the proper medication[1] or diet, which caused him temporary blindness and severe damage to his eyes and kidneys. (*Id*.). He seeks unspecified compensatory damages for alleged medical negligence. (*Id*.).

---

[1] Plaintiff claims that the head nurse at CCDC prescribed him oral medication, which he believes were placebos. (Paper No. 1 at Attachment). He also asserts that the head nurse altered physician's orders to administer insulin to him in the evening, leaving his blood sugar high so there would not be a need to give him a p.m. snack bag. (*Id*.).

On June 29, 2005, Defendant CCDC filed a Motion to Dismiss or, Alternatively, for Summary Judgment. (Paper No. 9). Plaintiff filed his Opposition on August 18, 2005. (Paper No. 13). The case is ready for this Court's consideration. Oral hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2004).

II.  Standard of Review

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court, however, need not accept unsupported legal conclusions or pleaded facts, or conclusory factual allegations devoid of any reference to particular acts or practices. *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989); *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-323. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to

confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

A prisoner presenting a denial of medical care claim must prove two essential elements.[2] First, he must satisfy the "objective" component by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If this first element is satisfied, the prisoner must then prove the second subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison officials or health care personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837. Healthcare staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844; *see also Johnson v. Quinones*, 145 F.3d at 167.

---

[2] The United States Court of Appeals for the Fourth Circuit has held that the Fourteenth Amendment due process rights of detainees are at least coextensive with the Eighth Amendment rights of convicted prisoners. *See Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998); *Whisenant v. Yuam*, 739 F.2d 160, 163 n.4 (4th Cir. 1984); *Loe v. Armistead*, 582 F.2d 1291, 1292 (4th Cir. 1978). It appears that Plaintiff was housed at CCDC prior to and after sentencing. Consequently, his medical claims shall be analyzed under the Eighth Amendment.

III.   Analysis

Defendant argues that it is not a "person" for purposes of suit under 42 U.S.C. § 1983. Alternatively, it claims, through the presentation of medical records, that Plaintiff received constitutionally adequate medical care.

Defendant asserts that during his detention at CCDC, Plaintiff was seen repeatedly for his diabetic condition.[3]  According to Defendant's materials, between August 29, 2003, and May 12, 2004, when Plaintiff was released on bond, he was seen 35 times by medical staff. (Paper No. 9, Ex. 7). Most, if not all, of these visits related to his diabetes. (*Id*.). Defendant indicates that Plaintiff's blood sugar was monitored twice daily throughout the entirety of his detention and that he was repeatedly disruptive with medical staff and, at their request, was moved to the Medical Unit in September of 2003, where his blood sugar level could be better controlled.[4]  (*Id*., Exs. 7-9). Defendant further states that in addition to the twice-daily tracking of his blood sugar, Plaintiff received all of his prescribed medications while detained at CCDC. (*Id*., Ex. 10). Defendant asserts that at the time of his discharge from CCDC, Plaintiff's diabetes was being treated with Glucophage and Glipizide. (*Id*., Exs. 7 & 8).

CCDC also claims that Plaintiff's medical diet was structured and resulted in an improved blood sugar level. (*Id*., Ex. 11).  Pursuant to his request, Plaintiff's 2200 calorie diabetic diet was reduced to 1800 calories. (*Id*., Ex. 12).  Defendant states that on October 30, 2003, when Plaintiff sought to order items from the commissary, he was informed that medical staff precluded him from ordering food items. (*Id*., Ex. 13).

---

[3]   Plaintiff's diabetes and prior medication were noted upon his admission to CCDC in August of 2003.

[4]   Defendant claims that Plaintiff was returned to the CCDC Medical Unit whenever staff wanted to more closely monitor his condition. (Paper No. 9, Exs. 7 & 9).

Defendant alleges that on November 20, 2003, Plaintiff again complained of high blood sugar and was informed that he would remain in the Medical Unit until his blood sugar level was better controlled. (Paper No. 9, Ex. 14). Upon admission to the Medical Unit, Plaintiff was found to possess contraindicated food– chips and crackers– which would elevate his blood sugar level. (*Id*.).

Defendant claims that Plaintiff was commissary-restricted and was placed in the Medical Unit to better monitor his food tray and the commissary items he was receiving. (*Id*., Ex. 15). According to Defendant, Plaintiff remained in the Medical Unit from November 20, 2003, until his return to work release: during this period Plaintiff's blood sugar readings were "at their lowest" levels. (*Id*., Ex. 16-18).

Defendant states that on October 22, 2005, Plaintiff was sentenced in the Circuit Court for Charles County, Maryland and detained at CCDC until his November 30, 2004, transfer to the Division of Correction. According to Defendant, Plaintiff submitted 17 inmate request forms during that 39 day period, most which concerned his diet and his "hoarding" snacks allotted to him by the Medical Unit. (*Id*., Ex. 23). Defendant claims that each and every complaint was addressed by correctional and/or medical staff. (*Id*.).

Finally, Defendant states that during this 39 day period, Plaintiff remained on the Glucophage and Glipizide. (*Id*., Exs. 25 & 26). Moreover, Defendant asserts that: Plaintiff was seen by medical staff on some six occasions; his blood sugar was checked twice a day; his insulin was administered each morning; he received a diabetic menu; and his medication was administered

5

as prescribed.[5]  (*Id*., Exs. 27-29).  In addition, Plaintiff was given an eye examination on November 1, 2004, and the results were found to be normal (*Id*., Ex. 26).

In his Opposition response, Plaintiff claims that his Complaint rests against the CCDC Medical Department.  (Paper No. 13).    He asserts that the Medical Department, and in particular head nurse "Wendy," showed a callous disregard for the care of his diabetes.  (Paper No. 13). Plaintiff complains that head nurse "Wendy" consistently changed and overrode physician's orders. He claims that the Medical Department was aware that his "blood sugar [was] raging out of control for the eight and a half months I was housed at the detention center." (*Id*.).   Plaintiff again complains that while detained at CCDC he was served the same foods as other detainees, thus causing a terrible rise in his blood sugar glucose.  (*Id*.)  He alleges that while his blood sugar level was being monitored twice daily, it was found to contain dangerously high levels of glucose for eight and one-half months.  (*Id*.)

The sole named Defendant in Plaintiff's Complaint is CCDC.  Plaintiff is, for all intents and purposes, seeking to hold the prison entity responsible for the actions of its employees.  The Court finds that CCDC is not a legal entity constituting a "person" under § 1983.  *See Sarro v. Cornell Corrections, Inc.*, 248 F.Supp.2d 52, 62 n. 2 (D. R.I. 2003) (noting that the Wyatt Facility is not a legal entity that may be sued); *Seals v. Grainger County Jail*, 2005 WL 1076326 (E.D. Tenn. May 6, 2005) (Grainger County Jail is not a suable entity within the meaning of § 1983").  The Court's inquiry, however, does not end there.

---

[5]     Plaintiff's medication was administered on a sliding scale of units depending on his blood sugar levels.  (Paper No. 9, Ex. 27).

The record shows that Plaintiff's medical treatment during his detention at CCDC was constitutionally adequate.[6] His diabetes was monitored daily, he was provided his medication and diet, and when his blood glucose levels were found to be high, he was placed in the Medical Unit for special monitoring of his food intake. Although Plaintiff complains of "temporary blindness" and severe damage to his eyes and kidneys, the undersigned finds that Plaintiff has failed to show through record, affidavit, or witness statements, that Defendant was deliberately indifferent to his medical problems and that this indifference caused him the claimed injuries.

IV.     Conclusion

For the aforementioned reasons, Defendant's Motion to Dismiss or, Alternatively, for Summary Judgment is hereby granted. Judgment is entered in favor of Defendant and against Plaintiff. A separate Order follows.


Date:   October 11, 2005                /s/
                                        RICHARD D. BENNETT
                                        UNITED STATES DISTRICT JUDGE

---

[6] Any claim resting in "medical negligence" is not actionable under 42 U.S.C. § 1983. *See Russell v. Shaeffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).